IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN WERNER, | ) | CASE NO.  1:12-CV-143 |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties.  (Doc. 9).  The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Brian Werner's application for a Period of Disability and Disability Insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence and therefore, conclusive.

For the reasons that follow, the undersigned AFFIRMS the decision of the Commissioner.

## I. PROCEDURAL HISTORY

In May 2008, Plaintiff Brian Werner ("Plaintiff" or "Werner") applied for a Period of Disability and Disability Insurance benefits.  (Tr. 86-88).  Werner alleged he became disabled on November 26, 2003, due to suffering a back injury at work.  (Tr. 103).  Plaintiff's insured status expired on September 30, 2004.  (Tr. 98).

The Social Security Administration denied Werner's application initially and upon reconsideration.  (Tr. 71-73, 78-80).  Thereafter, Plaintiff requested a hearing before an

administrative law judge to contest the denial of his application. (Tr. 82). On November 18, 2010, Administrative Law Judge Alfred Lucas (the "ALJ") convened a hearing to evaluate Plaintiff's application. (Tr. 24-68). Plaintiff appeared with counsel and testified before the ALJ. (*Id.*). Medical expert, Dr. Hershel Goren (the "ME"), also appeared and testified at the proceeding. (*Id.*).

On December 29, 2010, the ALJ issued an unfavorable decision finding Werner was not disabled. (Tr. 11-19). The ALJ applied the five-step sequential analysis,[1] and concluded Plaintiff retained the ability to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b), and consequently was not disabled. (*Id.*). In response, Plaintiff sought review of the ALJ's decision from the Appeals Council. (Tr. 7). But, the council denied Werner's request

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability". *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

2

making the ALJ's decision the final decision of the Commissioner.  (Tr. 1-3).

## II.  PERSONAL BACKGROUND INFORMATION & PERTINENT MEDICAL HISTORY

Werner was born on November 1, 1963.  (Tr. 26).  Accordingly, at the time he applied for benefits he was considered as a "younger person" for Social Security purposes.  *See* 20 C.F.R. § 404.1563(c).  Plaintiff completed the twelfth grade and has past experience working as a machinist, welder, janitor and punch press operator.  (Tr. 27-29).

### 1.  Medical History Prior to September 30, 2004

In November 2003, Plaintiff presented to the emergency room of Marymount Hospital.  (Tr. 167-68).  He complained of severe pain in his lower back and left leg after suffering a work-related injury.  (Tr. 167).  Werner was ultimately diagnosed with a lumbosacral sprain, hypertension and lumbosacral spondylosis.  (*Id*.).  He was admitted to the hospital for four days.  (*Id*.).  The next month an MRI showed that Werner had "[m]ultilevel disc herniation with canal and foraminal stenosis".  (Tr. 216).

In January 2004, Plaintiff presented to his treating physician, Dr. Thomas Mandat, who diagnosed Plaintiff with a lumbar strain/sprain with persistent pain and prescribed medication.  (Tr. 430).  Plaintiff presented back to Dr. Mandat in March complaining of pain radiating down both his legs.  (Tr. 429).  The doctor noted that therapy had only produced mild improvement in Werner's symptoms and that Plaintiff was going to apply for epidural blocks, which he began to receive weekly in June 2004.  (Tr. 426, 429).  However, the epidural blocks did not result in significant improvement in Werner's condition.  (Tr. 424-25).  Accordingly, Dr. Mandat rescheduled Plaintiff for additional physical therapy and advised him to consult with a neurosurgeon.  (Tr. 424).

2.  Medical History After September 30, 2004

In January 2006, Plaintiff underwent decompressive surgery on his back at L3 and L4. (Tr. 293-94).  Plaintiff had two more surgeries in March 2007.  (Tr. 356-57).  First, Werner underwent bilateral L3-4 facet fusion with rods and screws.  (*Id*.).  On the same day, Plaintiff also had a "right T10 transarticular approach and a T9-10 microdisectomy" on an extruded disc. (Tr. 453).  Next, a MRI was taken of Werner's thoracic spine in August 2007.  (Tr. 342).  The MRI revealed postoperative changes on Plaintiff's right side at T10 and small focal disc protrusions at multiple levels without significant canal encroachment.  (*Id*.).

In November 2006, Dr. Jack Rutkowski became Plaintiff's treating physician after Dr. Mandat retired.  (Tr. 361).  In November 2008, Dr. Rutkowski penned a letter summarizing the origin of Plaintiff's back pain, history of treatment, and present condition.  (Tr. 498-500).  From an orthopedic standpoint, the physician opined that Plaintiff's pain prevented him from engaging in a range of normal daily activities and from working in even the most sedentary job.  (Tr. 499). Therefore, the doctor concluded Werner was permanently and totally disabled.  (Tr. 500).

On March 16, 2009, Werner presented to Dr. Kevin Trangle for a consultative examination presumably in relation to Plaintiff's worker's compensation claim for his work-related injury.  (Tr. 450-56).  Dr. Trangle's report provided a lengthy discussion of Plaintiff's treatment history and a brief summary of Plaintiff's current status upon physical examination. (*Id*.).  Based on his review, Dr. Trangle also concluded that Werner was currently permanently and totally disabled.  (Tr. 455).

Lastly, on May 1, 2009, Dr. Sheldon Kaffen performed a consultative examination of Plaintiff on behalf of the Industrial Commission of Ohio.  (Tr. 457-62).  Dr. Kaffen also drafted a report summarizing Werner's medical history since the time of his injury and opining on

4

Plaintiff's ability to work. (*Id.*). Dr. Kaffen found that Werner had sustained "a permanent impairment of 20% of [his] whole person" and due to this condition was incapable of working at the present time. (Tr. 461).

### III. VOCATIONAL EXPERT TESTIMONY

During the hearing, the ALJ heard testimony from the ME, Dr. Goren. (Tr. 56-68). The ME testified that during the relevant period of November 2003 through September 2004, Werner's lumbar spine pain did not meet or equal listing level. (Tr. 56). Instead, Dr. Goren opined that Plaintiff retained the ability to perform full-time work during this period. (*Id.*). Dr. Goren further opined Werner retained the residual functional capacity ("RFC") to lift and carry up to 20 pounds occasionally and 10 pounds frequently. (Tr. 57). However, the doctor noted that Werner should not work around ladders, ropes or scaffolds, and that Werner's job should involve no more than occasional stooping, kneeling, crouching, crawling, or use of ramps or stairs. (*Id.*).

The ME also strongly disagreed with portions of the findings issued by Drs. Rutkowski, Trangle and Kaffen. For example, although Drs. Rutkowski, Trangle and Kaffen opined Werner was unable to work, Dr. Goren explained that all three doctors wrongly concluded that Werner retained no range of motion in his lumbar spine. (Tr. 64). Dr. Goren stated that the physicians' abnormal findings should have alerted them that they were not getting accurate examinations of Werner. (Tr. 56).

Additionally, during the proceeding, counsel probed Dr. Goren regarding his presumed bias in the case. (Tr. 65). Counsel recounted a statement made by Dr. Goren at a hearing in October 2008, wherein the ME allegedly stated that "those who want to work work, those who do not want to work don't work." (*Id.*). Dr. Goren responded that this statement was not bias,

5

but "100 percent accurate". (*Id*.).

## IV. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in his application of the five-step sequential analysis:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2004.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of November 26, 2003 through his date last insured of September 30, 2004.

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease; lumbar canal stenosis; lumbar spondylosis and mild dextroscoliosis; lumbar radiculopathy; and disc herniation at L3-L4 and T9-T10.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except additionally limited to: no unprotected heights, ropes, ladders, or scaffolds; only occasional ramps or stairs; and only occasional stooping, kneeling, crouching, or crawling.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

   . . .

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from November 26, 2003, the alleged onset date, through September 30, 2004, the date last insured.

(Tr. 13-19) (internal citations omitted).

## V.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

## VI.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971)*.* "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)*.*  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed*. Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)*.*  This Court may not try the case de novo, resolve conflicts in the evidence, or decide

questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VII. ANALYSIS

Plaintiff asserts a host of arguments attacking the ALJ's decision, none of which are sufficient to overturn the ALJ's decision or justify remand. First, Plaintiff suggests that the ALJ erred because the ALJ ruled Plaintiff's impairments did not meet or equal listing level, even though Plaintiff's impairments "came close" to meeting the requirements of Listing 1.04(C). Second, Plaintiff contends his medical record supports his complaints of pain, and therefore, the ALJ should have deemed him disabled. Next, Plaintiff argues the ALJ erroneously evaluated the medical opinion evidence of record. Finally, Werner argues it was improper for the ALJ to rely upon the ME's testimony because it was tainted by the ME's personal bias.

### 1. Meeting A Listing

Werner implies that the ALJ should have deemed him disabled because his impairments came close to meeting the requirements of Listing 1.04(C) which addresses disorders of the spine. A claimant will be deemed disabled if his impairments meet one of the Listings of Impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. In order to "meet" a listing, the claimant must satisfy all of the listing's requirements. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009). "It is insufficient that a claimant comes close to meeting the requirements of a listed impairment." *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) (citing *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986)). Here, by Plaintiff's own admission, his impairments only "come close" to satisfying the requirements of

8

the listing. Consequently, the ALJ did not err in finding that Plaintiff was not disabled at this step in the analysis. *See id*.

### 2. Disabling Pain

Plaintiff next challenges the ALJ's evaluation of his complaints of disabling pain. Although Plaintiff initially acknowledged that this case dealt with a very narrow window of time, the arguments presented in his brief do not appear to recognize that reality. It is well-established that "[i]n order to establish entitlement to disability insurance benefits, an individual must establish that he became 'disabled' prior to the expiration of his insured status." *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) (citing 42 U.S.C. § 423(a) and (c); and *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). "Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004) (citing *Cornette v. Sec'y of Health & Human Servs.*, 869 F.2d 260, 264 n. 6 (6th Cir. 1988)). In fact, such evidence is "only relevant to a disability determination where the evidence 'relates back' to the claimant's limitations prior to the date last insured." *May v. Astrue*, No. 4:10-cv-1533, 2011 WL 3490186, at *5 (N.D.Ohio June 1, 2011) (White, J.) (citing *Barnett v. Sec'y of Health & Human Servs.*, No. 86-3111, 1987 WL 36614, at *3 (6th Cir. Jan. 13, 1987)).

Because Werner's insured status expired on September 30, 2004, he needed to provide the ALJ with evidence showing that he was disabled prior to this date. Plaintiff points to the findings and conclusions reached by Drs. Trangle, Kaffen and Rutkowski to demonstrate that the ALJ should have deemed him disabled due to his intractable pain. Though the Social Security regulations recognize that a claimant can be rendered disabled by the symptoms resulting from his impairments, such as pain, rather than the impairment itself, 20 C.F.R § 404.1529, Plaintiff

9

does not explain why or how these doctors' opinions were reflective of his abilities prior to September 2004, when each of them offered their respective opinions in 2008 or later. Notably, while each doctor opined Werner was incapable of working *at the time their reports were penned*, not one of them expressly indicated that Plaintiff was limited to this extent prior to September 2004. Consequently, Plaintiff has not shown that this evidence "relates back" to reflect his pain and limitations prior to the expiration of his insured status. Without such connection, this evidence has little or no probative value because these opinions post-date the termination of Plaintiff's insured status by several years. *See May*, 2011 WL 3490186, at *5. Thus, Plaintiff has not shown that the ALJ's evaluation of his pain was erroneous.

### 3. Medical Opinion Evidence

Plaintiff's objections to the ALJ's evaluation of the medical opinion evidence also fail. Contrary to Plaintiff's implication, a treating source's findings are not automatically entitled to complete deference. Opinions from treating sources are only entitled to controlling weight when the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Additionally, while these opinions are ordinarily entitled to greater weight than that of a non-examining source, there are instances where it may be appropriate for the ALJ to look more favorably upon the opinion of a non-examining source, such as a medical expert, especially when the medical expert has access to the claimant's complete medical record and observed the claimant at trial. *Compton v. Astrue*, No. 1:11-CV-626, 2012 WL 4473155, at *8 (S.D.Ohio Sept. 26, 2012); *see Massey v. Comm'r of Soc. Sec.*, 409 F. App'x 917, 921 (6th Cir. 2011) (ALJ did not err in discounting treating sources' opinions based on testimony of ME who directly refuted treating physicians' findings); *see also*

10

*Moss v. Comm'r of Soc. Sec.*, No. 3:09-CV-005, 2010 WL 1257562, at *2 (S.D.Ohio Mar. 30, 2010) ("While it is highly unusual to fail to give controlling weight to the reasonably consistent opinions of a treating physician, a treating specialist and a one-time examining consultant. . . in favor of a non-examining medical expert. . . [the] same is not legally prohibited, generally, nor factually unwarranted in this specific case.").

Here, the ALJ provided good reasons for rejecting treating physician, Dr. Rutkowski's opinion, as well as the opinions of the two consultative examiners, Drs. Trangle and Kaffen. The ALJ explained that these doctors' provided opinions "indicating abnormalities which should have been considered impossible with regard to their reviews of the claimant's file and their physical examinations." (Tr. 18). For instance, the ALJ highlighted that Werner's actions, such as sleeping in a recliner, directly conflicted with the doctors' findings regarding Werner's ability to flex his lumbar spine. The regulations permit the ALJ to consider opinions from medical experts. 20 C.F.R. § 404.1527(e)(2)(iii). In this case, it was reasonable for the ALJ to discount these doctors' opinions in favor of the ME's conclusions given that the ME was able to observe Werner during the hearing and had the benefit of reviewing Werner's entire medical record.

The Court reminds Plaintiff that its duty at this stage is not to review Plaintiff's case *de novo*. *Garner, supra*, 745 F.2d at 387 (citing *Myers v. Richardson*, 471 F.2d 1265 (6th Cir. 1972)). Instead, the Court is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. *Id*. Finding such support exists, the undersigned must affirm the ALJ's ruling, even though the record may also reflect substantial evidence which supports the opposite conclusion. *Mullen, supra*, 800 F.2d at 545.

4. Bias of ME

Finally, Plaintiff contends the ALJ should not have relied on the opinion of the ME because his testimony was tainted by his own personal bias toward people who claim they are unable to work. Werner maintains that a statement allegedly made by the ME at a different proceeding – "those who want to work work, those who do not want to work don't work" – exposed the ME's personal bias in this case.

It is the ALJ's duty to judge the credibility of witnesses. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). In light of this fact, the ALJ's credibility findings are entitled to great deference, particularly because the ALJ has the opportunity to observe the demeanor of the witnesses during the hearing. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987)). Though the ALJ did not comment upon his view of the ME's statement, it is clear that the ALJ was not convinced that the ME was biased as the ALJ gave the ME's testimony great weight. Plaintiff has not presented sufficient evidence to call the ALJ's acceptance of the ME's testimony into question. The statement upon which Plaintiff relies to show bias was made in October 2008, over two years prior to Werner's hearing, and in a different case. These factors weigh strongly against finding bias in this case. The Court further notes that Plaintiff presented this same argument to the Appeals Council and it also rejected Plaintiff's claim finding no evidence that the ME was biased. Consequently, the ALJ did not err by accepting the ME's testimony.

## VIII.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the Court AFFIRMS the decision of the Commissioner.

IT IS SO ORDERED.

s/ Kenneth S. McHargh<br>
Kenneth S. McHargh<br>
United States Magistrate Judge

Date:  March 18, 2013.